1   David S. Gingras, #021097
    **Gingras Law Office, PLLC**
2   4802 E. Ray Road, #23-271
    Phoenix, AZ 85044
3   Tel.: (480) 264-1400
    David@GingrasLaw.com
4
    Attorney for Plaintiff
5   Mira Holdings, Inc.

6

7                  **UNITED STATES DISTRICT COURT**

8                       **DISTRICT OF ARIZONA**

9   Mira Holdings, Inc., a Minnesota          Case No._____
10  Corporation,
                                              **COMPLAINT FOR:**
11         Plaintiff,                          **1.)  DECLARATORY RELIEF**
                                              **LANHAM ACT, 15 U.S.C.**
12  v.                                        **§1114(2)(D)(iv) and §1125 (a) and**
                                              **2.) REVERSE DOMAIN NAME**
13                                            **HIJACKING ANTICYBERSQUATTING**
    Temco Industrial, LLC,                    **CONSUMER PROTECTION ACT,**
14                                            **15 U.S.C. § 1114(2)(D)(v) and §1125(d)**
15         Defendant.

16

17

18         For its Complaint, Plaintiff Mira Holdings, Inc. ("Mira") alleges as follows:

19              **NATURE OF THE CONTROVERSY/JUDISCTION/VENUE**

20         1.    This is a civil action for Declaratory Judgment under the Lanham Act, 15

21  U.S.C. §§ 1114(a) and 1125(a); and reverse domain name hijacking in violation of the

22  Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1114(2)(D)(v) (the "ACPA").

23         2.    This Court has personal jurisdiction over Defendant as it consented to

24  jurisdiction by this court in selecting "Registrar" as "Mutual Jurisdiction" for resolution

25  of this matter, in a Complaint filed with the World Intellectual Property Organization

26  (WIPO) in accordance with Paragraph 3(b)(xii) of the Uniform Domain Dispute

27  Resolution Policy (UDRP) of the International Committee of Assigned Names and

28  Numbers (ICANN).

3.      Venue in this Court exists as the office of the Registrar of the domain name, GoDaddy.com, LLC. is located in Scottsdale, Maricopa County, Arizona, and, pursuant to 28 U.S.C. § 1391(b)(1) and (c), as under subsection (b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District.

### PARTIES

4.      Plaintiff, Mira Holdings, Inc, is a Minnesota Corporation with its office at 2801 Hennepin Avenue, Suite 159, Minneapolis, Minnesota 55408.

5.      On information and belief, Defendant Temco Industrial LLC, is a Texas resident limited liability company having its principal place of business at 1801 Industrial Blvd., Brenham TX 77833.

### FACTS COMMON TO ALL CLAIMS

6.      This is an action for Declaratory Judgment and other statutory remedies under the Lanham Act and the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. §1125(d). Plaintiff is the registrant of the internet domain name Temco.com. The domain name has been "locked" by the registrar, GoDaddy.com, and is at immediate risk of being transferred away from Plaintiff by, and as a result of, the actions of Defendant, which claim trademark rights and certain other rights with respect to the term and the domain name Temco.com. Plaintiff seeks a determination by this Court that its registration and/or use of Temco.com is not, and has not been in violation of the ACPA and that Plaintiff's use of Temco.com constitutes neither an infringement, a threat of dilution of Defendant's trademark nor a violation of the ACPA

7.      This case involves "reverse domain name hijacking," which occurs when an individual or an entity alleges it is the owner of a trademark and assert spurious claims of trademark infringement and trademark dilution against the owner of a domain name whose chosen domain name is similar or identical to the registered trademark. Defendants are attempting to wrest control of Plaintiff's domain name by asserting baseless allegations of trademark infringement, trademark dilution and cybersquatting.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

8.     Plaintiff is in the business of acquiring and using for lawful business purposes, various generic domain names as and when they become available, for leasing, sale or email services.

9.     The disputed Domain Name Temco.com was originally purchased by the Plaintiff for a cost of $12,540 in 2022.  Pursuant to his business plan, Plaintiff purchased and registered the domain name on or about Mar. 18, 2022, in good faith at which time (and at all times subsequent thereto) he believed and has had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful, and has "parked" it with a neutral GoDaddy Market Place "For Sale" page since acquisition.  The Plaintiff does not exercise any control over the "For Sale" page services provided by GoDaddy.com..

10.     Plaintiff is in the business of registering domain names and using them for email addresses or sale or lease; is the registrant of many domain names corresponding to non-distinctive and non-exclusive dictionary words, phrases, foreign words, and surnames and has accumulated over 1,000 domain names that are used in this manner.

11.     Plaintiff started investing in domain names about 12 years ago. AmpCo.com, PawCo.com, Tempia.com, and TeamCo.com are similar generic domains that are owned by Plaintiff.

12.     Defendant Temco Industrial has a limited U.S. trademark for the mark "Temco Industrial".

13.     Plaintiff's domain name Temco.com is a common business name used by numerous companies in the U.S. and worldwide.  Defendant's trademark is non-exclusive and for a narrow class of goods.  The trademark is limited to the following goods and services: IC 8: Hand-tools, namely, wrenches, wire crimpers, lug crimpers, cable cutters, and wire cutters, IC 7: Tools not being parts or components of machines, namely, hydraulic jacks,concrete vibrators, hydraulic pumps, and IC 9: Electric cables, namely, welding cables; electric wires, namely, solar panel wire; electrical terminal boxes. Because the Respondent has no plan to use the domain name for "Hand Tools/Tools or

Electric Cables," the Respondent does not believe that general public sale of a common business domain name infringes Defendant's mark. It's worth noting that the Defendant's trademark has a claimed first use of January of 2018. Respondent's Domain Temco.com was registered in February of 1996, which predates Defendant's trademark by approximately 22 years.

14.    The term "Temco" is both a business name and abbreviation used by a number of organizations and groups.

15.    According to a search performed on the United States Patent and Trademark Office website in January 2026, which is incorporated by reference, there are currently 875 active mark registrations which include the word "TEMCO", the majority of which do not appear to be owned by or associated with Defendant.



16.    A USPTO Trademark search using TESS for the term "Temco" provides notable live results including the following:

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

a.    **TemcoLogistics.com**.  The "Temco Logistics" trademark is for "IC 35: business management of logistics for others; transportation logistics, IC 37: installation of gas appliances and electric appliances, IC 40: Recycling of appliances[SEP]." Serial # 90466590, Reg. # 6642984 owned by Home Express Delivery LLC (DBA Temco Logistics) from Laguna Beach, CA.  This trademark has a claimed first use of April of 2013.

b.    **Temco of Oklahoma**.  This "Temco" trademark is for "IC 07: Machines for cleaning vehicle, machine and industrial parts that have washing and degreasing capabilities and use water " Serial # 78486898, Reg. # 3017821 owned by GODFREY, JAMES, W.  (INDIVIDUAL; USA) from OKLAHOMA CITY, OK.  This trademark has a claimed first use of July of 1978.  This is the original owner of the Temco.com domain name.

c.    **Temco Japan Co., Ltd.**  This "Temco" trademark is for "IC 009: communications apparatus, namely two-way communications modules for use with radios, telephones and other sound transmission equipment." Serial # 74044719 , Reg. # 1688315 owned by Temco Japan Co., Ltd. (CORPORATION ) from Tokyo, JAPAN. This trademark has a claimed first use of August of 1987.

d.    **Temco of Germany**.  This "Temco" trademark is for "IC 007: components and accessories for textile machines, namely texturing spindles, textile spindles, bearings, bearing elements, tanglelacing jets." Serial # 74506783 , Reg. # 1957079 owned by SAURER COMPONENTS GMBH. (CORPORATION ) from GERMANY.  This trademark has a claimed first use of March of 1994.

e.    **Temco Tires of Missouri.**  This "Temco" trademark is for "IC 042: retail store and wholesale distributorship services in the field of tires, tubes for tires and chains for tires for motor vehicles." Serial # 74696804, Reg. # 1982515 owned by Tire Mart, Inc. (CORPORATION; MISSOURI, USA).  This trademark has a claimed first use of March of 1994.

17.     On Oct. 7, 2025, Defendant filed a Complaint thereby initiating an arbitration proceeding against Plaintiff with the World Intellectual Property Organization (WIPO) in accordance with the Uniform Domain Name Dispute Resolution Policy ("UDRP") adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN") against the Plaintiff for the domain name Temco.com.

18.     On or about Oct. 9th, 2025, the registrar of the domain name, GoDaddy.com "locked" the domain name, thereby prohibiting Plaintiff from utilizing the domain name in accordance with the uses typically enjoyed by a registrant of a domain name.  The action to "lock" the domain name was in accordance with the UDRP and associated procedures.

19.     On January 8, 2026, the WIPO panel assigned to the case rendered a decision requiring the transfer of the domain name to Defendant. (WIPO Arbitration and Mediation Center   Case No. D2025-3913). A copy of the decision is attached as EXHIBIT A and is incorporated by reference.  As of the date of the filing of this complaint, the domain name continues to be "locked" pending the transfer of the registration to the Defendant on January 23, 2026, pursuant to the UDRP decision.

20.     Plaintiff's use of the term as a domain name has not traded upon any goodwill or reputation enjoyed by Defendant as it relates to the products that Defendant offers, nor is there any possibility of confusion between the products offered by Defendant to the general public. Further, Defendant did not cite one instance of consumers being confused by Plaintiff's web site and Defendant's web site.

21.     Plaintiff's use of Temco.com as his chosen domain name is a fair or otherwise lawful use of the term.

22.     At no time, did Plaintiff trade upon or use Defendant's mark for "Temco Industrial."

23.     At no time, did the Plaintiff register or use the domain name Temco.com in "Bad Faith" as defined by 15 U.S.C. §1125.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

24.     Due to a possible transfer of the domain name to the Defendant pursuant to an possible adverse Decision by the WIPO Panel, Plaintiff is now forced to bring this action to protect his rights in his intellectual property.  Plaintiff may have to retain counsel and incur substantial fees and costs to bring this suit.

25.     Because an adverse WIPO panel decision may direct that the Temco.com domain name be transferred to Defendant, this Court has jurisdiction under 15 U.S.C. §1114(2)(D)(v) to determine whether Plaintiff's registration and use of Temco.com is unlawful under the ACPA and the Lanham Act.

26.     Based on the facts set forth herein, an actual controversy has arisen and now exists between Plaintiff and Defendant regarding whether or not Plaintiff's use of the term Temco.com as his domain name infringes Defendant's trademarks and/or constitutes trademark dilution and/or can serve as the basis for any relief under any Federal or state law.

27.     Plaintiff has never sold, transferred, or trafficked in the domain name.  Nor has Plaintiff at any time specifically offered to sell the domain name to Defendant, though the domain name, along with other domain names registered by Plaintiff are available for sale.

28.     At all times, Plaintiff utilized the domain name in a bona fide manner for bona fide purposes.

29.     Plaintiff did not have any intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

30.     Plaintiff did not provide material and misleading false contact information when applying for the registration of the domain name. Plaintiff did not fail to maintain accurate contact information with respect to the domain name in question or with respect to any other domain name.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

31.     Plaintiff's use of Temco.com as his chosen domain name is a fair or otherwise lawful use of the term.

32.     Because of the actions of Defendant, and its claims of trademark infringement and dilution, Plaintiff faces losing valuable rights in his Internet domain name.

**FIRST CLAIM FOR RELIEF**
**Declaratory Judgment**
**Lanham Act, 15 U.S.C. §§ 1114(2)(D)(v) & 1125(a)**

33.     Plaintiff Mira incorporates by reference the factual allegations set forth in Paragraphs 6 through 32 above.

34.     The ACPA, provides a cause of action for a registrant whose domain name has been suspended, disabled, or transferred by which the registrant may sue for a declaration that the registrant is not in violation of the Act and for an injunctive relief to the domain name registrant, including the reactivation of the domain name. 15 U.S.C.§ 1114(2)(D)(v).

35.     Section 1114(2)(D)(v) provides a registrant who is threatened with the loss of its domain name under the UDRP with a cause of action for an injunction returning the domain name if the registrant can show that the registrant is in compliance with the ACPA.

36.     Defendant does not have an exclusive registered U.S. Trademark in "Temco.com" nor did it have such a right at the time that the Temco.com domain was first registered in 1996.

37.     Plaintiff did not register the domain name Temco.com with the bad faith intent to profit from the goodwill of defendant.

38.     Plaintiff is entitled to have the unencumbered use of the domain name Temco.com and to have the domain name reactivated and to have any and all suspensions or transfers terminated and prohibited.

39.     Unless this Court issues a Declaratory Judgment that Plaintiff is entitled to maintain registration of its Domain Name, Temco.com, the potential transfer of the

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Domain Name to Defendant will damage Plaintiff irreparably. Mira Holdings, Inc. has no adequate remedy at law.

40.     Defendant's acts make this an exceptional case under 15 U.S.C. §1117(a), and Mira Holdings, Inc. is thus entitled to an award of attorney's fees and costs.

41.     Alternately, Mira Holdings, Inc. is entitled to elect statutory damages instead of actual damages and profits, pursuant to 15 U.S.C. §1117 (d).

**SECOND CLAIM FOR RELIEF**
**Anticybersquatting Consumer Protection Act (ACPA)**
**15 U.S.C. § 1125(d) and § 1114(2)(D)**

42.     Plaintiff Mira incorporates by reference the factual allegations set forth in Paragraphs 6 through 32 above.

43.     15 U.S.C. § 1114(2)(D)(iv) provides that when a registrar takes an action to transfer a domain name "based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorneys' fees, incurred by the domain name registrant as a result of such action."

44.     Section 1114(2)(D)(v) provides a registrant may "file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this Act." Under this section, a "court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name back to the domain name registrant."

45.     Mira Holdings's registration and use of the domain Name Temco.com was not unlawful under Title 15, United States Code, § 1114(2)(D)(v) or §1125(d).

**WHEREFORE**, Plaintiff Mira Holdings, Inc., prays for judgment against Defendants as follows:

A.     For a declaration by the Court, that Defendants have no trademark rights in the domain name that are subject to protection in the United States;

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

1    B.    For a declaration by the Court, pursuant to 15 U.S.C. § 1114(2)(D)(iv)(v),

2    Plaintiff is entitled to registration, ownership and use of the domain name Temco.com;

3    C.    For a declaration by the Court, pursuant to 28 U.S.C. § 2201, Plaintiff's

4    registration of the Domain Name is lawful and does not infringe on any trade or service

5    mark right the Defendants may claim in the United States;

6    D.    For a declaration by the Court that Defendants have attempted unlawfully

7    to interfere with Plaintiff's rights and expectations under its domain name registration.

8    E.    Damages according to proof at trial;

9    G.    Cost and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v)

10   and reasonable attorneys fees; and

11   H.    For such other and further relief as this Court deems just and proper.

12   DATED: January 20, 2026.

13                                                    **GINGRAS LAW OFFICE, PLLC**

14

15                                                    David S. Gingras, Esq.

16                                                    Attorney for Plaintiff
                                                      Mira Holdings, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

GINGRAS LAW OFFICE, PLLC
4802 E. Ray Road, #23-271
PHOENIX, AZ 85044

## JURY DEMAND

Demand for Jury Trial Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury of all issues so triable.

GINGRAS LAW OFFICE, PLLC
4802 E. RAY ROAD, #23-271
PHOENIX, AZ 85044

Exhibit A



**ARBITRATION
AND
MEDIATION CENTER**

**WIPO**
WORLD
INTELLECTUAL PROPERTY
ORGANIZATION

---

## ADMINISTRATIVE PANEL DECISION
Temco Industrial v. Mira Holdings
Case No. D2025-3913

### 1. The Parties

Complainant is Temco Industrial, United States ("U.S."), internally represented.

Respondent is Mira Holdings, U.S., internally represented.

### 2. The Domain Name and Registrar

The disputed domain name <temco.com> (the "Domain Name") is registered with GoDaddy.com, LLC (the "Registrar" or "GoDaddy").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on September 25, 2025.  On September 25, 2025, the Center transmitted by email to the Registrar a request for registrar verification in connection with the Domain Name.  On September 25, 2025, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the Domain Name, which differed from the named Respondent (Domains by Proxy LLC) and contact information in the Complaint.  The Center sent an email communication to Complainant on October 1, 2025, providing the registrant and contact information disclosed by the Registrar, and inviting Complainant to submit an amendment to the Complaint to also comply with required formalities of the proceeding.  Complainant filed an amended Complaint on October 7, 2025.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified Respondent of the Complaint, and the proceedings commenced on October 9, 2025.  In accordance with the Rules, paragraph 5, the due date for Response was November 2, 2025.  The Response was filed with the Center on November 2, 2025. On November 5, 2025, the Center received a supplemental filing from Complainant, which was purportedly limited to clarifying factual matters raised in Respondent's Response.

The Center appointed Christopher S. Gibson, Matthew Kennedy, and John Swinson as panelists in this matter on December 3, 2025. The Panel finds that it was properly constituted. Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

Complainant is a tool manufacturer located in central Texas, U.S., specializing in the manufacture and distribution of tools for industrial users and tradespeople. Complainant has been manufacturing industrial tools since 1968, and since 1999 has been selling its products exclusively online through its website at <temcoindustrial.com> and via ecommerce sites such as eBay and Amazon.

Complainant states that it is commonly referred to as "Temco" and the evidence shows that Complainant brands its products as "TEMCo." Complainant owns several registered trademarks – these registrations cover tools, equipment, and related goods sold by Complainant. Complainant submitted the following trademark registrations in evidence:

- TEMCO INDUSTRIAL (word mark), U.S. Trademark Reg. No. 5,725,964, filed on August 3, 2018, with a January 2018 first use in commerce and registered on April 16, 2019, in international class 8. In this registration, the term "industrial" is expressly disclaimed.

- TEMCO (word mark), U.S. Trademark Reg. No. 7,465,423, filed on February 21, 2023, with a January 2, 2018, first use in commerce, and registered on August 6, 2024, in international classes 7, 8, and 9.

- TEMCO (word mark), Chinese Reg. No. 65,243,153, registered on October 14, 2023, in international class 8.

The Domain Name was originally registered on February 6, 1996. The evidence submitted by Respondent indicates the Domain Name was purchased at an auction organized by NameJet.com on March 18, 2022, for USD 12,540, with Respondent confirming that it was the purchaser. The Domain Name currently resolves to a GoDaddy webpage where it is offered for sale.

Complainant states that in March 2022 it sought to buy the Domain Name, which had been previously owned by a company called Core Laboratories specializing in oil and gas production. According to Complainant, the Domain Name was of little value to Core Laboratories and Core eventually abandoned the website associated with the Domain Name, while retaining ownership. Complainant has provided evidence that it contacted a representative of Core Laboratories on March 24, 2022, to purchase the Domain Name. After lengthy and continuing communications with Core, and with Complainant stating that it expected to purchase the Domain Name from Core, Complainant received news on February 10, 2023, from a representative of Core that, instead, the Domain Name had already been purchased by a third party.

Complainant states that its representative decided to contact the new owner of the Domain Name through GoDaddy's Afternic domain name brokers, seeking to purchase the Domain Name in his personal capacity and without disclosing his ties to Complainant, thereby hoping this would allow the Domain Name to be purchased at a reasonable price, and then subsequently transferring it to Complainant. Complainant provides evidence that on February 22, 2023, a GoDaddy broker indicated the Domain Name's owner was "looking for $150,000 USD for TEMCO.COM." Complainant's representative states he offered to buy the Domain Name for approximately USD 5,000 and subsequently continued to contact GoDaddy's brokers submitting multiple offers. According to Complainant, the responses from the GoDaddy brokers indicated a price for the Domain Name as high as USD 180,000, and as time went on, the price was lowered to approximately USD 50,000, while the brokers claimed five letter domain names are hard to get and cost more. Complainant provides evidence that during this ongoing effort, Complainant's representative contacted a GoDaddy broker on November 4, 2024. Complainant states its representative offered

USD 1,000 for the Domain Name, and the broker replied on that same date with a counteroffer of USD 48,500, stating as follows:

"Hi Bryan,

Thanks for your email.  The seller has decided not to counter currently as the offer is simply too far apart from their asking price ($48,500 USD).

The seller said they are willing to wait for the right end user to purchase this name with a stronger offer (ex. temcoindustrial.com, temcologistics.com, and temcoparts.com would all greatly benefit from owning this name).

If by chance you can present a much stronger offer closer to the asking price, please let me know and I'll try my best to get a discount here for you."

Complainant states the GoDaddy broker was willing to share this information (identifying Complainant and two other companies using the name temco) because the broker did not know Complainant's representative was associated with Complainant.  After that, Complainant states its representative continued to contact GoDaddy brokers every few months, offering low amounts for the Domain Name.  Complainant states GoDaddy is the only company offering the Domain Name for sale and has provided evidence that the current "minimum offer" listed on GoDaddy's webpage is USD 36,375.

Respondent is located in Minnesota, U.S. and states it is a professional domain name investor with more than 1,000 domain names under ownership and offered for sale.  Respondent further states the Domain Name is a generic, memorable five letter domain name with an estimated GoDaddy "GO value List" appraisal of more than USD 25,000.  However, the evidence provided by Respondent (Exhibit C) conflicts with this claim, indicating the current "GoValue" estimate for the Domain Name is USD 10,787.

Respondent states that it has sold a number of "keyword" plus "co" domain names for large sums, and refers to <ownco.com> at USD 23,800, <leafco.com> at USD 21,250, and <tavco.com> at USD 9,500.  Respondent also includes <hemper.com> at USD 237,000, <certik.com> at USD 77,000, although they do not incorporate the "co" element.  Respondent states that based on these domain name values it decided to purchase the Domain Name in March 2022 when it became available.  The Domain Name was set to expire on March 18, 2022, so Respondent participated in the "drop-catching" auction organized by NameJet.com for the Domain Name, purchasing it for USD 12,540 on that same date.


## 5. Parties' Contentions

### A. Complainant

Complainant contends that it has satisfied each of the elements required under the Policy for a transfer of the Domain Name.

Complainant claims that the Domain Name is identical to Complainant's TEMCO trademark, that its customers and users consistently refer to it as "Temco" in the marketplace, and that the mark TEMCO functions as the distinctive source identifier for Complainant's goods and services.  Further, the addition of the descriptive word "industrial" in one of its trademark registrations does not alter this recognition, nor does it preclude that the core protected term is TEMCO.  Complainant concludes the Domain Name is identical or, at minimum, confusingly similar to Complainant's trademark rights in TEMCO.

Complainant asserts that Respondent has no rights or legitimate interests in the Domain Name.  In particular, Respondent does not own any trademark rights in the name Temco, and Complainant has never licensed, authorized, or permitted Respondent to use its TEMCO mark in any manner.  Complainant further states Respondent is a domain name holding company and has never been commonly known by the name

Temco.  By contrast, Complainant has operated under the Temco name for decades, and customers know and refer to Complainant as Temco.

Complainant contends the Domain Name has not been used in connection with any legitimate goods or services.  Instead, it has been parked and listed for resale at highly inflated prices, ranging from USD 48,500 to USD 150,000.  Complainant claims a GoDaddy broker acting on behalf of Respondent stated that the Domain Name was being held out for Complainant.  Complainant argues this is not speculation;  instead, it is an explicit acknowledgment that Respondent acquired and is holding the Domain Name for the purpose of selling it to Complainant, the trademark owner, and such conduct is inconsistent with any claim of rights or legitimate interests under the Policy.  Further, Complainant maintains Respondent is not using the Domain Name for any fair, informational, or noncommercial purpose.  Rather, the only purpose is to hold the Domain Name for profit, targeting Complainant's well-established TEMCO brand.  For these reasons, Complainant concludes Respondent cannot demonstrate any rights or legitimate interests in the Domain Name.

Complainant also contends Respondent registered and is using the Domain Name in bad faith.  Complainant alleges Respondent acquired the Domain Name, not for any bona fide purpose, but instead to resell it to Complainant.  The Domain Name has been listed for prices that far exceed any reasonable out-of-pocket registration costs.  Complainant claims a broker acting on behalf of Respondent made an explicit admission of targeting Complainant, stated that the Domain Name was being held out specifically for Complainant.  Complainant argues this is evidence that Respondent's primary purpose in registering the Domain Name was to sell it to Complainant, the trademark owner, for profit.  Complainant urges this conduct falls squarely under paragraph 4(b)(i) of the Policy, which identifies registration for resale to the trademark holder as bad faith.

Complainant further states that Respondent initially used a proxy service to hide its identity.  While privacy services are not improper in themselves, their use in this context is consistent with an attempt to conceal bad faith registration and use.  Complainant claims the Domain Name has been held purely as an asset for sale, coupled with the admission that the intended buyer is Complainant.  Complainant argues passive holding of a domain name identical to a registered and longstanding trademark, with no evidence of any legitimate purpose, is recognized as bad faith under the Policy.

Finally, Complainant submits Respondent is a professional domain investor with a history of registering domain names corresponding to other parties' trademarks for resale.  Prior UDRP cases show similar behavior, confirming that Respondent engages in a pattern of such conduct, consistent with Paragraph 4(b)(ii) of the Policy.  Complainant concludes that, taken together, Respondent's conduct demonstrates the Domain Name was registered and is being used in bad faith under Policy, paragraphs 4(b)(i) and 4(b)(ii).

**B. Respondent**

Respondent contends that Complainant has not satisfied all three of the elements required under the Policy for a transfer of the Domain Name.

Respondent states this dispute involves the Domain Name that consists of the merger or blending of the common abbreviation word "tem" with the abbreviation word "co," which together form the common business name "Temco" used by numerous companies worldwide.

Respondent states the Domain Name has never been used by Respondent to interfere with Complainant's business, nor to target Complainant.  Respondent indicates the Domain Name has been "parked" at GoDaddy's Afternic.com marketplace since acquisition, with an inquiry page.  Respondent states the Domain Name has never been offered for sale directly to Complainant, and that offering a generic, common phrase domain name for public sale, in itself, does not constitute bad faith targeting of Complainant's trademark rights in what is otherwise a common business name.

Respondent has provided results from a search of the term "temco" in the U.S. Patent and Trademark Office's ("USPTO") trademark database, which returned a number of results for both Complainant and other trademark owners, with some TEMCO trademarks predating Complainant's mark.  Further, a search of the WIPO Global Brand Database of Trademarks produced a list of sixty-nine trademarks for the term "Temco," with sixty-seven owned by persons other than Complainant.  Respondent observes that Complainant's U.S. trademarks are registered for a narrow class of goods, including hand-tools, tools, and electric cables.  Respondent states it has not used the Domain Name for these or any of the products or services listed in Complainant's trademark registrations.

Respondent submits that a search of dotDB.com domain name database shows that there are sixty-four domain extensions registered for "temco," including seventeen companies using the term in domain names in various TLD extensions, while a Google search for "temco" shows numerous companies using the "Temco" name.

Respondent contends that prior UDRP panels have determined that domain name investors provide a bona fide offering of goods and services.  Respondent states it owns similar keyword-plus-co domain names that have been purchased at auction, including <ampco.com>, <pawco.com>, <tempia.com>, and <teamco.com>.  Respondent claims this is consistent with its bona fide business plan of acquiring memorable domain names to list for sale or lease to the public, not specifically targeting Complainant in any way.  Respondent asserts that if Complainant had desired to acquire the Domain Name, it could have placed a bid at the NameJet.com auction or demand that NameJet.com stop the auction and award Complainant the Domain Name;  however, Complainant did neither.  Respondent states when it purchased the Domain Name at auction for USD 12,540, the price paid was based on the quality and memorable nature of the Domain Name.

Respondent claims that registering the Domain Name, which reflects a common phrase used in ordinary English conversation and is used in commerce by various companies around the world, is not a bad faith registration.  Respondent contends UDRP panels have found that respondents should be allowed to own domain names that have numerous potential buyers and to sell them to whom they choose on their own terms.  Respondent states it was not specifically familiar with Complainant until the filing of this case.  Respondent's research before purchasing the Domain Name showed that there were numerous companies worldwide that used "Temco" in commerce.

Respondent states that in its Complaint, Complainant admits to inquiring about purchasing the Domain Name and receiving a purchase price of USD 48,500 through email with the GoDaddy broker.  Respondent submits that this price was merely a price point in negotiations, and that comparable domain names have been sold in this price range or higher by Respondent, and Complainant was free to offer a lesser amount to see if a mid-point could have been reached, but instead chose to file this case to wrest control of the Domain Name by legal means.  Respondent urges the UDRP is not intended to be a price arbitration mechanism for domain name purchases on the secondary market.  Rather than attempting to negotiate in good faith or at least let Respondent know that the USD 48,500 price was too high and attempt to offer a middle-ground amount, Complainant filed the Complaint.

Respondent asserts Complainant's correspondence was with GoDaddy's Afternic brokers who did not identify the prospective purchaser to Respondent, and Respondent had no idea who was inquiring to buy the Domain Name.  Respondent states Afternic does not identify buyers, in order to prevent domain name sellers from evading the Afternic's commission by directly dealing with buyers.  For that reason, Respondent contends Complainant's negotiations with the broker, where Complainant was not identified to Respondent, cannot be considered evidence of an intent of having acquired the Domain Name to sell it to Complainant or a competitor of Complainant, as required for bad faith under the Policy.

Respondent argues common sense would dictate that companies, organizations or start-up companies could possibly benefit from owning and using the Domain Name.  It appears that only after Respondent acquired the Domain Name and Complainant was unhappy with the price quoted through Respondent's broker, did Complainant decide to use the UDRP to obtain the Domain Name.  Respondent argues

Complainant made the decision, when the price was considered too high, to forego a good faith negotiation and acquire the Domain Name through legal means.  Respondent contends this can often constitute Reverse Domain Name Hijacking ("RDNH").

## 6. Discussion and Findings

### 6.1 Supplemental Filing

On November 5, 2025, Complainant's submitted a supplemental filing that was purportedly limited to clarifying factual matters raised in Respondent's Response.  The Panel observes that the Rules provide for the submission of the Complaint by Complainant and the Response by Respondent, while no express provision is made for supplemental filings by either party.  Paragraphs 10 and 12 of the Rules in effect grant the Panel sole discretion to determine the admissibility of supplemental filings (including further statements or documents) received from either Party.  In this case, the Panel determines that Complainant's supplemental submission does not appear to add any information or clarifications that cannot already be garnered from the existing submission and evidence, and the supplemental submission is therefore rejected.

### 6.2 Merits

In order to succeed on its Complaint, Complainant must demonstrate that the three elements set forth in paragraph 4(a) of the Policy have been satisfied.  These elements are that:

(i) the Domain Name registered by Respondent is identical or confusingly similar to a trademark or service mark in which Complainant has rights;
(ii) Respondent has no rights or legitimate interests in respect of the Domain Name;  and
(iii) Respondent has registered and is using the Domain Name in bad faith.

### A. Identical or Confusingly Similar

It is well accepted that the first element functions primarily as a standing requirement.  The standing (or threshold) test for confusing similarity involves a reasoned but relatively straightforward comparison between Complainant's trademark and the Domain Name.  WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition, ("WIPO Overview 3.0"), section 1.7.

Complainant has shown rights in respect of its TEMCO trademarks through registration and use of the marks for the purposes of the Policy.  WIPO Overview 3.0, section 1.2.1.  The dominant element, TEMCO, in Complainant's TEMCO INDUSTRIAL mark, U.S. Trademark Reg. No. 5,725,964, is reproduced in the Domain Name without the descriptive word "industrial," while the entirety of Complainant's TEMCO mark, U.S. Trademark Reg. No. 7,465,423, is also reproduced in the Domain Name without any additional element.

Accordingly, the Domain Name is confusingly similar, or as the case may be, identical, to Complainant's TEMCO marks for the purposes of the Policy and the first element has been established.

### B. Rights or Legitimate Interests

Although the overall burden of proof in UDRP proceedings is on the complainant, UDRP panels have recognized that proving a respondent lacks rights or legitimate interests in a domain name may result in the difficult task of "proving a negative," requiring information that is often primarily within the knowledge or control of the respondent.  As such, where a complainant makes out a prima facie case that the respondent lacks rights or legitimate interests, the burden of production on this element shifts to the respondent to come forward with relevant evidence demonstrating rights or legitimate interests in the domain name (although the burden of proof always remains on the complainant).  If the respondent fails to come forward with such relevant evidence, the complainant is deemed to have satisfied the second element.  WIPO Overview 3.0, section 2.1.

Having reviewed the available record, the Panel determines Complainant has established a prima facie case that Respondent lacks rights or legitimate interests in the Domain Name.  It is undisputed that Respondent does not own any trademark rights in the name Temco;  that Complainant did not authorize Respondent to use its TEMCO mark or to register the Domain Name;  that Respondent has never been commonly known by the name Temco;  and that the Domain Name is not being used for a noncommercial or fair use purpose.

The main point of contention raised by Respondent is that the Domain Name is being used in connection with a bona fide offering of goods or services, because Respondent is a professional domain name investor who buys generic domain names in order to resell them, and that it acquired the Domain Name due to its inherent value as a "keyword" plus "co" domain that would be suitable for resale, without targeting Complainant and its TEMCO mark.  The Panel observes that while some UDRP panels have found that such a commercial use of a domain name may qualify as a bona fide offering of goods or services under the Policy, paragraph 4(c)(i), this is true only where the respondent did not register and use the domain name in bad faith, with intent to target or exploit a complainant's trademark.

The crux of this case thus involves whether the evidence demonstrates that Respondent was likely aware of (or should have been aware of) Complainant and its TEMCO trademark when registering the Domain Name, with Respondent's subsequent alleged bad faith use of the Domain Name supporting that finding – that is, holding the Domain Name for resale at highly inflated prices suggestive of targeting a TEMCO trademark owner, such as Complainant, and with additional circumstantial evidence indicating Respondent had Complainant in mind both when registering the Domain Name and later when seeking to sell it.  After reviewing the available record, and for reasons that will be explained in more detail under the third element, the Panel finds that the second element of the Policy has been established.

## C. Registered and Used in Bad Faith

The Panel observes that paragraph 4(b) of the Policy establishes circumstances that, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith.  One of the scenarios is that the respondent has registered or acquired the disputed domain name primarily for the purpose of selling, renting, or otherwise transferring it to the complainant who is the owner of a trademark (or to a competitor of that complainant), for valuable consideration in excess of the respondent's documented out-of-pocket costs directly related to acquiring the domain name.  This matches the claim that Complainant has asserted against Respondent in this case.  Moreover, bad faith under the UDRP is broadly understood to occur where a respondent intentionally takes unfair advantage of or otherwise abuses a complainant's mark.  See WIPO Overview 3.0, section 3.1.

The Panel agrees with the panel in a previous case brought against Respondent (*SRL BOWTEX v. Mira Holdings,* WIPO Case No D2024-1632)*,* which recognized that "as a general rule, a person such as the respondent [a professional domain investor] has the right to acquire a domain name containing a dictionary word or phrase *based upon its dictionary meaning* and to offer this for sale at a price of its choosing, *provided that in so doing it does not target the trademark value of the term*" (italics added).  See WIPO Overview 3.0, section 3.1.1.

In the present case, the Domain Name is comprised of the term "temco," which Respondent has similarly asserted consists of a combination of the "common abbreviation word" "tem" with the abbreviation "co," forming "temco."  Respondent's own description of the Domain Name acknowledges that "temco" is not a dictionary word or phrase.  However, Respondent argues that it chose "temco" based on its quality and memorable nature as a five-letter domain name.  It shows that it has sold three other domain names similarly comprised of a word or syllable and the abbreviation "co."

The Panel recognizes that "temco" is easy to pronounce and to remember, and that it is used by various businesses.  Accordingly, in this type of case it is necessary to assess whether Respondent was targeting Complainant or not.

Although the record contains limited evidence addressing the strength of Complainant's TEMCO mark, Complainant had used the mark in business for many years and acquired its registered trademark rights before Respondent's acquisition of the Domain Name.

The Panel also observes Respondent has acknowledged that prior to purchasing the Domain Name at auction, Respondent conducted research: "Respondent's research before purchasing Temco.com showed that there were numerous companies worldwide that used "Temco" in commerce." Moreover, Respondent has submitted a number of exhibits in this case which demonstrate that Respondent is capable of conducting sophisticated research using different domain name and trademark databases, as well as Google searches, to identify TEMCO trademark owners and/or companies using the Temco name. Respondent tactically states "Respondent was not *specifically* familiar with TemcoIndustrial.com until the filing of this UDRP" (italics added). However, Respondent easily could have, but did not, deny that it was aware of Complainant's TEMCO mark when registering the Domain Name. A trademark search, such as those submitted by Respondent in evidence in this case for the U.S. trademark registry, would have revealed Complainant's TEMCO mark as well as the TEMCO marks held by other companies. In accordance with WIPO Overview 3.0, section 3.2.3, panels have repeatedly held that sophisticated or professional domain name registrants – those who register large portfolios of domain names or operate as domain investors – cannot credibly claim ignorance of trademark rights that would reasonably have been discovered through basic searches at the time of registration. See also *Administracion Nacional de Telecomunicaciones (Antel) v. Privacydotlink Customer 3691928/Kwangpyo Kim, MEDIABLUE INC,* WIPO Case No. D2020-1212 ("Respondent's apparent sophistication as a dealer in domain names with 'brandable value' makes it somewhat more likely that Respondent would have had the ANTEL mark in mind when acquiring the Domain Name.")

Moreover, the following analysis in *SRL BOWTEX v. Mira Holdings, supra,* is also applicable in this case, where Complainant's TEMCO mark

"was registered and in force in the jurisdiction where the Respondent is based at the point when it decided to acquire the disputed domain name. The Respondent either knew about this, or it deliberately chose to look the other way in an act of willful blindness. In that context, it should be borne in mind that the Respondent warranted to its Registrar in terms of paragraph 2 of the Policy that to its knowledge the registration of the disputed domain name would not infringe upon or otherwise violate the rights of any third party."

In this case, Complainant's activities are supported by a U.S. trademark (i.e., the jurisdiction where Respondent is based) that had been used in commerce for many years and registered as a trademark for approximately three years before Respondent acquired the Domain Name. Respondent does not have to be held responsible for searching the world for possible foreign trademarks in order to identify Complainant's interest (although it did submit evidence in this case of a search of WIPO's Global Brand Database showing multiple TEMCO trademark registrations). Moreover, as stated in *SRL BOWTEX v. Mira Holdings, supra*, "[t]he fact that there might be other trademark owners (whether of common law marks or otherwise) who may also have had an interest in the disputed domain name and/or the fact that the Respondent has registered other six letter domain names without challenge does not absolve the Respondent of the consequences of the Policy in this respect."

This evidence of Respondent's targeting of Complainant (or another business using the TEMCO trademark or name) is also supported by the November 4, 2024, communication between Complainant and the GoDaddy broker. The broker stated in relevant part:

"The seller [Respondent] said they are willing to wait for the right end user to purchase this name with a stronger offer (ex. temcoindustrial.com, temcologistics.com, and temcoparts.com would all greatly benefit from owning this name)."

Respondent argues that Complainant's negotiations with the broker, in which Complainant was not identified, cannot be considered evidence of Respondent's intent for having acquired the Domain Name to sell it to Complainant or a competitor of Complainant. While a broker is typically an intermediary, the Panel considers

that here, the broker was conveying (to Complainant) Respondent's objectives to hold the Domain Name to be sold to Complainant (or another TEMCO mark owner or business).  Moreover, Respondent does not deny that the broker accurately conveyed Respondent's intentions.  The Panel considers that this evidence shows an almost textbook example of running afoul of Policy paragraph 4(b)(i).  And it is also highly suggestive that Respondent was likely aware of Complainant's mark (and of TEMCO marks owned by third parties) when acquiring the Domain Name through the drop-catch auction, for purposes of reselling it to Complainant (or a TEMCO mark owner).

Moreover, it is not disputed that Respondent registered the Domain Name primarily to sell it for a price in excess of its documented out-of-pocket costs directly related to the Domain Name.

Finally, the Panel notes that this case can be distinguished from the following cases involving Respondent:

(i) *Intel Corporation v. Mira Holdings, Inc. and Domain Admin, supra,* where the disputed domain name was <realsense.com>.  It was undisputed that the domain name consisted of two dictionary terms of the English language, the expression "real sense" was not exclusively associated with the complainant but has been used as a common phrase used in daily English language, and that the complainant, Intel Corporation, owned a trademark in the U.S. for INTEL REALSENSE, not "realsense" alone.  Further, Intel owned a trademark for REALSENSE in China, but Respondent is located in the U.S. Finally, there was no evidence that Respondent was targeting the complainant as trademark owner when holding the domain name for resale;  and

(ii) *IP Guardian Pty Ltd v. Mira Holdings*, *supra*, where the disputed domain name was <ipguardian.com>. The panel recognized that the terms "IP" and "guardian" are terms widely used in commerce as supported by evidence of third-party use, and that the "IP" abbreviation is a meaningful term in and of itself, of universal applicability, while the other word in the disputed domain name, "guardian" is a natural complement.  The panel found that, together, the two terms form a meaningful phrase that suggests something or someone who protects IP addresses or intellectual property.  The panel considered that this combination of terms was one that Respondent could plausibly have registered as a domain name because of its inherent value as a meaningful phrase, rather than because of its value necessarily derived from the complainant's mark.  In addition, the complainant in this case owned a trademark for IP GUARDIAN only in Australia and not in the U.S. where Respondent was located.  Finally, there was no evidence to suggest that Respondent was targeting the complainant as trademark owner when holding the domain name for resale.

In sum, the Panel determines, based on a review of all of the circumstances in this case, that Respondent acquired the Domain Name primarily for the purpose of selling, renting, or otherwise transferring it to Complainant (or a competitor of Complainant) for valuable consideration in excess of documented out-of-pocket costs directly related to the Domain Name.  Policy, paragraph 4(b)(i).

Accordingly, for all of the above reasons, the Panel finds, on the balance of the probabilities that Complainant has established the third element of the Policy.

**D. Reverse Domain Name Hijacking**

Because Complainant has satisfied the three elements required under the Policy, the Panel finds no support for Respondent's allegation of RDNH.

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the Domain Name <temco.com> be transferred to Complainant.


*/Christopher S. Gibson/*
**Christopher S. Gibson**
Presiding Panelist


*/Matthew Kennedy/*
**Matthew Kennedy**
Panelist


*/John Swinson/*
**John Swinson**
Panelist


Date:  December 30, 2025